UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DAVID THORNE, | ) |
|---|---|
| Plaintiff, | ) |
| | ) |
| v. | ) No: 2:09 CV 87 |
| | ) |
| MEMBER SELECT INSURANCE COMPANY, | ) |
| Defendant. | ) |

### OPINION and ORDER

On February 24, 2008, plaintiff David Thorne's ("David") house at 726 Arbogast Street, Griffith, Indiana (the "Arbogast house"), was damaged by fire.[1] David's homeowner's insurer, defendant Member Select Insurance Company ("Member Select")[2] denied his claim, concluding that the fire had been intentionally set by him (or by someone acting at his direction), and so a policy exclusion applied to void coverage. David then filed the present action,[3] claiming breach of contract, and breach of the insurer's duty of good faith and fair dealing. Member Select has moved for summary judgment, contending that its denial of coverage is not a breach of contract because of the applicable exclusion; or,

---

[1] February 24, 2008, is the date used in the complaint and by the parties. The Fire Marshal's report indicates that the Griffith Fire Department was summoned shortly after midnight on February 25, 2008, however. (DE # 14-6 at 1-2.)

[2] It appears from the insurance policy at issue that the proper spelling of the insurer's name is one word, "MemberSelect." Throughout this order the court uses "Member Select," as was used in the complaint.

[3] Thorne filed the action in state court. It was properly removed to this court on the basis of diversity of citizenship between the parties.

at the very least, there is no evidence that its denial on the basis of the exclusion was an action taken in breach of its duty of good faith.

*Summary Judgment Standard*

RULE 56 of THE FEDERAL RULES OF CIVIL PROCEDURE states that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A summary judgment is required, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (commenting on portions of RULE 56(c) which, on December 1, 2010, were moved to subpart (a)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving

party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

*Undisputed Facts Pertinent to Analysis*

None of the underlying material facts in this case are in dispute, and so there no need to engage in a lengthy recitation of them. As will be seen, this case boils down to the proper application of the summary judgment standard to those facts, in particular, deciding what reasonable inferences can be drawn from those facts. Many of the facts are taken from examinations under oath ("EUO") conducted by Member Select of both plaintiff David and of his brother, Scott Thorne ("Scott"), pursuant to the insured's duty to cooperate in the investigation of a claim. The facts leading Member Select to conclude that the exclusion applies and which are necessary to understand the court's ruling, briefly summarized, are these.

Prior to the fire, the Arbogast house had been unoccupied, for days if not weeks. David considered it to be his residence, but he had been spending most of his nights staying either at a warehouse he rented in Valparaiso, Indiana, where he kept cars he was working on, or at his girlfriend's house. (DE # 14-4 (hereinafter, "David's EUO") at 5-8.) At the time of the fire he had not been at the house since February 1, 2008, when he stopped there to pick up his mail. (*Id*. at 44.) Scott also had been living in the house, paying David roughly $400 a month for doing so, but had moved out in early February to move back in

3

with his parents. (DE # 14-3 (hereinafter, "Scott's EUO") at 9; 23-24; 29.)[4] As far as David and Scott were both aware, they were the only individuals with keys to the house.

In addition to being unoccupied at the time of the fire, both the gas and the electricity to the house had been turned off because of non-payment. (David's EUO at 36-37; Scott's EUO at 36.) As of February 15, 2008, David owed his mortgage holder $495.15 in late charges. (DE # 14-10 at 2.)

Interestingly, Scott was a prior owner of the Arbogast house, but had lost it in foreclosure. (Scott's EUO at 14.) His brother David bought the house during the foreclosure process, but Scott didn't know whether David had gotten it for a "cheap" reduced price. (*Id*. at 15, 20, 38-39). David knew the price that had been paid for the house, knew how much was being asked for it, and bought it because he thought it was "a good deal." (David's EUO at 20.)

David was at his warehouse in Valparaiso when a neighbor called his cell phone and told him that his house was on fire. (David's EUO at 51.) David then called his

---

[4] Member Select argues in its memorandum in support that Scott inconsistently stated, during his deposition, that he was still living in the Arbogast house up until the date of the fire; however, Member Select has failed to provide those deposition pages as an exhibit, and so has not supported that contention. In his response, however, David has provided one of the pages of Scott's deposition cited, page 18, and it does suggest what Member Select claims. Scott testified that he was in the house until a couple of days before the fire when he went out of town for the weekend, then he came back to town on the night of the fire and slept at his parent's house because his son had been staying with his grandparents and was already asleep. (DE # 24-6 at 3 (dep. p. 18).)

parent's house to find out where Scott was,[5] and spoke to his father; apparently Scott was there, and then told of the fire. (David's EUO at 55; Scott's EUO at 34.) Scott is unsure, however, whether his father spoke to David on the phone, or to the neighbor, who may have also called the Thorne parents about the fire. (Scott's EUO at 34-35.)

The fire was investigated by Jeff Roseboom, a Certified Fire and Explosion Examiner with the Indiana State Fire Marshal Investigations Division. (DE # 14-5 at 1.) He was assisted by Lake County Deputy Sheriff Brian Marsh "and his arson dog, Pyro." (*Id.*) Pyro indicated the presence of accelerants. (*Id.*) Along with Roseboom's other observations, such as the fact that the utilities were turned off; the lack of any indication of mechanical/electrical faults in the furnace, water heater, other electrical and gas fixtures and appliances, etc.; and the pattern of burn marks, Roseboom determined that the fire was incendiary in origin (that is, caused by someone starting it) and resulted from the ignition of a flammable liquid that had been poured on the floor in the living room, hallway and bedrooms. (*Id*. at 2-3; DE # 14-6 at 13.) An engineering firm hired by Member Select to do a "cause and origin analysis" arrived at the same conclusion, although sections of the flooring material obtained from Roseboom did not test positively for accelerants in a laboratory analysis.[6] (DE # 14-7 at 2.)

---

[5] David also testified that he did not know that Scott had moved out of the house. This makes his assumption that his parents, near or after midnight on a Sunday night, would know Scott's whereabouts, somewhat puzzling.

[6] The lab result does not eliminate the possibility that flammable liquids were present. (DE # 14-7 at 2, ¶ 4(h).)

5

There were no signs the house had been broken into prior to the fire. (David's EUO at 58.) On David's and Scott's last visits to the house it was secure, with the doors and windows locked. (David's EUO at 45-47; Scott's EUO at 30-32.)

Keith Quintaville is a Member Select claims representative and he ultimately handled the claim. He asked David for permission to conduct a credit check, in an effort to determine whether David had a financial motive to set the fire, and David declined to give permission. (DE # 14-1 at 5, ¶ 12.) David also refused to provide cell phone records which could indicate where he was at the time of the fire, or to submit to a polygraph examination. (*Id.* at 6, ¶ 13.) Quintaville found these refusals suspicious. (*Id.*)

The homeowner's insurance policy covering the Arbogast house excludes coverage for a loss which is cause by "[a]n action by or at the direction of an **insured person** committed with the intent to cause a loss." (DE # 14-2 at 10 (p. 9 of the policy), ¶ 9.) As is typical in insurance contracts, the use of bold text indicates a defined term, and "**insured person**" is defined as including "any **resident relative**." (*Id.* at 5 (p. 4 of the policy), ¶ 6(b).) The term "**resident relative**" is defined to include a resident of the insured premises who is related to the policy owner by blood. (*Id.*, ¶ 4.)

Based on the above (and additional undisputed facts which the court has omitted from this brief summary), Quintaville in an affidavit states:

> I concluded that the insured claim should be denied due to exclusion from coverage. Specifically, I concluded that an exclusion under the Policy applied because the loss was caused by "an action by or at the direction of an insured person committed with the intent to cause a loss." . . . I denied Thorne's claim for the fire loss because after my investigation was concluded, the

6

>results led me to believe that Thorne caused, or directed his brother, Scott
>Thorne, to cause the fire intentionally.

(DE # 14-1 at 7, ¶ 17, ¶ 19.)

*Analysis*

The parties agree that the policy at issue, and this case, is governed by Indiana law. Under Indiana law, an insurer relying on a policy exclusion from coverage has the burden of proof on the issue whether the exclusion applies. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004). A party with the burden of proof on an issue can obtain a summary judgment only where the evidence is so one-sided that it "points inescapably" in the moving party's favor, and every reasonable jury would decide that party has met its burden of proof. *See Frobose v. American Sav. and Loan Ass'n of Danville*, 152 F.3d 602, 615 (7th Cir. 1998) (*citing Visser v. Packer Eng'g Assocs. Inc.*, 924 F.2d 655, 660 (7th Cir. 1991)). Member Select contends that it is entitled to a summary judgment in this case, because the undisputed evidence establishes one thing: that either David or Scott intentionally started the fire, and because both meet the definition of "insured person" (Scott being a "resident relative"), Member Select is properly relying on the policy exclusion for an intentional act by an insured.

David's response in opposition to Member Select's motion is more interesting for what it doesn't say than what it does. David admits that the undisputed evidence establishes that the fire was intentionally caused, and he has not provided either his own

7

affidavit, or one from his brother Scott. Thus, in response to the motion neither affirmatively denies being involved in causing the fire.[7] Instead, David argues simply that:

> [B]eyond the findings that the fire was likely intentionally set by someone, MemberSelect has failed to put forth any evidence to support its assertion of the arson defense. No motive, means or opportunity on the part of either David Thorne or Scott Thorne has been demonstrated by MemberSelect, directly or circumstantially.

(DE # 24 at 8.)

This is not entirely true. The electric and gas service to the house had been turned off because of non-payment, and David owed nearly $500 in late fees on his mortgage payments. This is some circumstantial evidence of financial distress and so of motive. Adding to that, it appears that David preferred to live either in his warehouse in Valparaiso or with his girlfriend. As for means and opportunity, the only evidence that David was at his warehouse at the time of the fire, and that Scott was at his parents' home, is their own statements under oath. They could be lying, just as they could be lying about not having given a key to anyone else and not having any knowledge as to who started the fire.

On summary judgment, however, the court cannot make credibility determinations, and David and Scott's uncorroborated statements could be enough to stave off summary judgment. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Nevertheless, David, as the non-movant, is entitled only to *reasonable* inferences from the undisputed

---

[7] However, in his response David points to his and Scott's deposition testimony, in which both deny having any knowledge of who started the fire.(DE # 24-4 at 3; DE # 24-6 at 31.)

8

facts, and viewing the evidence as a whole, summary judgment should be granted for Member Select if the court believes that, were the case to go to trial, no reasonable jury would find against Member Select and for David on Member Select's proof that the exclusion applies. *See Matney v. County of Kenosha*, 86 F.3d 692, 695 (7th Cir. 1996) ("If no reasonable jury could find in favor of the party opposing the motion, it must be granted," *citing Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995). It is undisputed that the fire was intentionally set, that the Arbogast house was not broken into, and that only David and Scott had keys. The inescapable conclusion is that one or both of them is responsible, directly or indirectly, for causing the fire, despite their claims to the contrary. This is not a case where there is an alternative inference that can be drawn favoring David, this is the only reasonable inference that can be drawn from all of the undisputed facts.

It would seem, then, that Member Select is entitled to summary judgment, but this is not to be, albeit for a reason that the parties fail to appreciate. Although Member Select believes that if David didn't cause the fire, Scott did so at David's direction (DE # 14-1 at 7, 19), it has pointed to no evidence of David issuing that directive, and a finding to that effect would be nothing more than speculation. Member Select argues that this doesn't matter, however, because Scott himself was an "insured person" under the policy, being a "resident relative." The problem with this argument, as Member Select admits, is that there is conflicting evidence as to when Scott moved out of the Arbogast house. On summary judgment, his statement under oath that he moved out of the house in early February must

9

be given credence; therefore, at the time of the fire, he was no longer a "resident relative" and so not an "insured person." If he set the fire on his own without David's knowledge or direction, then, the exclusion would not apply.

Obviously, the question hanging in the air is why Scott, of his own whim, would set the fire in his brother's house. There is no evidence that he is simply a firebug. There is evidence, however, that he was living in a house that he once owned but lost in foreclosure, and paying rent to a brother who bought the house during the foreclosure at a good price,[8] but who, by all outward appearances, had more or less abandoned it leaving it to Scott to take care of. This is enough to suggest that Scott may have had a grudge, giving him a motive to start the fire.

Having said this, the court thinks the possibility that a reasonable jury would find that David had no involvement with causing the fire, and returning a verdict against Member Select on its exclusion defense, is extremely remote. It is not impossible, however; that is, the court cannot say that only an unreasonable jury could find for David. Therefore, summary judgment must be denied on Member Select's claim that it has not breached the insurance contract because of the exclusion. *Cf. Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1264 (7th Cir. 1993)

---

[8] Although Scott denies knowing what his brother paid for the house, it is reasonable to infer that he would have some knowledge that the price was somewhat low, from general knowledge concerning foreclosures and from knowing what he was credited for sale of the house during the foreclosure proceedings. His testimony also somewhat suggests that knowledge. When asked why David would have chosen to buy that house in particular, he answered: "That's probably something between him and the bank. I don't know if it was cheap. I don't – I don't know." (Scott's EUO at 20.)

10

(although "stench of racism" unmistakable from facts in record, "well-established principles governing the disposition of motions for summary judgment" required facts to be decided by jury.)

The opposite result obtains on David's claim that Member Select breached its duty of good faith and fair dealing, however. In Indiana, "there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). A claim of bad faith, also called a breach of the duty of good faith, exists when the insurer breaches this duty by denying a claim when it knows that there is no rational, principled basis for doing so. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). Proof of bad faith exists when there is "clear and convincing evidence[9] which establishes the insurer had knowledge that there was no legitimate basis for denying liability." *Id.* (citing *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992)). A finding of bad faith requires evidence of a state of mind of "conscious wrongdoing" including "dishonest purpose, moral obliquity, furtive design, or ill will." *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (internal quotation omitted); *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259,

---

[9] The *Freidline* decision states that the standard for proving a bad faith claim is "clear and convincing evidence." *See also Sexson v. State Farm Fire & Cas. Co.*, 61 F. App'x 267, 271 (7th Cir. 2003). There is some possibility that the standard for proving a bad faith claim is preponderance of the evidence and the standard for proving punitive damages is clear and convincing evidence. *See Hickman*, 622 N.E.2d at 520; *Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474, 484 (7th Cir. 1994). However, neither standard is met in this case.

11

1261 (Ind. Ct. App. 1998) ("Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present.").

A claim for bad faith is not generated by every erroneous denial of an insurance claim. *Hickman*, 622 N.E.2d at 520. Insurers may dispute a claim in good faith, erroneously deny a claim, fail to diligently investigate a claim, or even breach a contract without committing an act of bad faith. *Id.*; *Allstate Ins. Co. v. Hennings*, 827 N.E.2d 1244, 1250 (Ind. Ct. App. 2005). Bad faith does not exist when an insurer rests its coverage decision upon a rational basis. *Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 29-30 (Ind. Ct. App. 2002); *Patel v. United Fire & Cas. Co.*, 80 F. Supp. 2d 948, 958 (N.D. Ind. 2000); *Colley*, 691 N.E.2d at 1261 (insurer not liable for bad faith if it denies liability with a rational, principled basis for doing so).

In sum, as this court, speaking through the Hon. Theresa L. Springmann, J., has explained, "a successful bad faith claim is composed of an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as the knowledge of the lack of a reasonable basis to deny a claim)." *Balzer v. Am. Family Ins. Co.*, 805 F. Supp.2d 618, 624-25 (N.D. Ind. 2011). To succeed on a bad faith claim at trial, a plaintiff must produce evidence establishing that there was no reasonable basis to deny the claim and that the insurer knew that there was no reasonable basis. *Id.*

Based on the undisputed facts and the discussion above, it is beyond any doubt that Member Select had and has a principled, rational basis for denying Thorne's claim. One need only compare the circumstantial evidence in this case with that discussed in *Hoosier*

*Ins. Co., Inc. v. Mangino*, 419 N.E.2d 978, 987 (Ind. Ct. App. 1981) (collecting cases) to see that there is good reason to think a jury would agree with Member Select's assessment that David had some involvement with causing the fire at his house. Member Select will be granted a summary judgment on Count III of David's complaint, seeking punitives and damages for mental distress and anguish.

*Conclusion*

For the foregoing reasons, Member Select's motion for summary judgment (DE # 13) is **GRANTED IN PART**, and Count III of the complaint will not go forward. Otherwise, the motion is **DENIED**, and this matter will be set for trial at the earliest date possible, by separate order.

**SO ORDERED.**

September 28, 2012

                                              s/James T. Moody  
                                              JUDGE JAMES T. MOODY  
                                              UNITED STATES DISTRICT COURT