# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DAVID THORNE, ) | |
|     Plaintiff, ) | |
| ) | |
|        v. ) | CAUSE NO. 2:09-CV-87-JEM |
| ) | |
| MEMBER SELECT INSURANCE ) | |
| COMPANY, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law [DE 134], filed by Defendant on July 5, 2016. Defendant asks the Court to vacate the jury's verdict and enter judgment in its favor under Federal Rule of Civil Procedure 50. On July 19, 2016, Plaintiff filed a response, and on August 5, 2016, Defendant filed a replied.

## PROCEDURAL BACKGROUND

On September 23, 2014, upon consent of the parties, the case was reassigned to the undersigned United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case under 28 U.S.C. § 636(c).

On June 6, 2016, this case proceeded to trial before a jury. On June 7, 2016, at the close of Plaintiff's evidence, Defendant moved for judgment as a matter of law, and Plaintiff responded to that motion. On June 8, 2016, in the interest of allowing the case to proceed to the jury and without ruling on the merits, the Court denied Defendant's motion and instructed Defendant to renew its motion within 28 days after the entry of judgment under Federal Rule of Civil Procedure 50(b).

On June 9, 2016, the jury returned a verdict in Plaintiff's favor, awarding $87,000 in damages. Judgment was entered that same day. On July 5, 2016, within Rule 50(b)'s 28-day time-

frame, Defendant filed this renewed Motion for Judgment as a Matter of Law.

## FACTS

This case involves a dispute over whether Defendant, an insurance company, should have paid Plaintiff's claim for a fire at Plaintiff's house. The parties agree that the following facts were proven at trial.

Plaintiff owned a house in Griffith, Indiana (the "Property"). Plaintiff's brother paid $86,000 for the home in 1998, and Plaintiff later purchased the Property in 2002 for $75,000.00. About two years after purchasing the Property, Plaintiff refinanced his mortgage, which had been paid down to $67,000, adding a line of credit worth $20,000 secured by the house.

Plaintiff slept mostly at his warehouse in Valparaiso, Indiana, rather than at the Property. Gas and electricity to the Property had been disconnected because of non-payment, and Plaintiff had not been to the house for over three weeks before it caught fire on February 24, 2008.

## STANDARD

The parties cite Indiana state law for the judgment as a matter of law standard. However, even in diversity cases such as this, federal standards apply to the procedural determination of whether a verdict is supported by sufficient evidence. *See Walter v. Bruhn*, 40 Fed. Appx. 244, 246 (7th Cir. 2002).[1] Under federal law, a Court may grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue." Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149-

---

[1] The *Walter* court noted, "Although courts in [the Seventh Circuit] have formerly applied state standards to the determination of mid-trial and post-trial motions regarding the sufficiency of the evidence, we have since 'adopt[ed] the federal reasonable-person standard accross the board: pre-trial, mid-trial, post-trial, and on appeal, for evaluating both the merits and the quantum of relief,' in diversity as well as federal cases.'" 40 Fed. Appx. at 246 (quoting *To-Am Equip. Co., Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 664 (7th Cir. 1998) (internal quotations omitted).

51 (2000). "Judgment as a matter of law is proper only if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the nonmovant" and making all reasonable inferences permitted by the evidence. *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001) (citations omitted); *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 449 (7th Cir. 2001).

**ANALYSIS**

Defendant moves for judgment as a matter of law on two grounds. First, Defendant argues there was insufficient evidence to support the jury's finding that Plaintiff was entitled to insurance coverage for the fire under Defendant's policy. Second, Defendant argues that even if there was enough evidence to support liability, there was insufficient evidence to support the jury's damage award in the amount of $87,000.

    A.    <u>Coverage</u>

Defendant contends that Plaintiff did not introduce sufficient evidence to demonstrate that the Property was covered by the policy at the time of the fire. The parties agree that the policy covered Plaintiff's house only if used as his "residence." Plaintiff argues that sufficient evidence supported the jury's coverage finding and that judgment as a matter of law is inappropriate on this ground.

The policy did not define the term "residence" with any specificity. The Court instructed the jury to consider the following three factors in determining whether the Property was, in fact, Plaintiff's residence: (1) Plaintiff's physical presence in the house; (2) whether Plaintiff had a subjective intent to reside there; and (3) Plaintiff's access to the house and its contents. Court's Final Jury Instruction 23; *see also Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1159 (7th Cir. 1993).

3

Plaintiff testified that he intended to live at the Property. He also testified that he kept almost all his personal belongings at the Property, that his mail was delivered there, and that he went there often, even if only to pick up his mail. Furthermore, other than his brother, who had also lived at house, Plaintiff was the only person with keys to the house. All this tends to show, even minimally, that the Property was Plaintiff's "residence" under Indiana law. *See Alexander*, 982 F.2d at 1159.

There is also significant evidence supporting a finding that the Property was not Plaintiff's residence. Even though it was the middle of winter at the time of the fire, Plaintiff did not know that the Property's gas or electricity had been shut off. Plaintiff's brother rarely saw Plaintiff at the Property, and Plaintiff had been sleeping almost exclusively at his warehouse. In fact, Plaintiff had not been to the Property in over *three weeks* before the fire.

In reviewing a jury's verdict, however, the Court does not decide between competing sets of evidence. For the jury's verdict to stand, the Court need only be convinced that there is a "reasonable basis in the record to support" the jury's verdict. *Susan Wakeen Doll*, 272 F.3d at 449-50. The Court "may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150 (citations omitted). Here, a reasonable person could find that the Property was Plaintiff's residence. He owned the Property, kept his belongings there, had his personal mail delivered there, and was physically present—albeit infrequently—at the Property.

Accordingly, because there was sufficient evidence to support the jury's finding concerning coverage, the Court declines to disturb the jury's verdict on that ground.

B. <u>Damages</u>

Defendant also argues that Plaintiff failed to introduce evidence sufficient to prove the amount of his damages under the insurance contract. "There must be an adequate basis in the record

for an award of damages, but it is not necessary for the evidence to show the amount of damages with absolute certainty or precision." *Burton v. GMC*, No. 1:95-CV-1054, 2008 U.S. Dist. LEXIS 62758, at *75-6 (S.D. Ind. Aug. 15, 2008) (citing *Trustmark Ins. Co. v. General & Cologne Life Re*, 424 F.3d 542, 552 (7th Cir. 2005)). A trier of fact must not rely on speculation or guesswork in arriving at the damages amount but may make a "reasonable estimate of damage based upon the relevant data." *Harbor House Condo. Ass'n v. Mass. Bay Ins. Co.*, 703 F. Supp. 1313, 1319 (N.D. Ill. 1988) (citations omitted). Put simply, the jury was to base their "decision on the evidence and not on guess or speculation. However, damages [did not need to] be proven to a mathematical certainty." Court's Final Jury Instruction 25.

After the parties presented their evidence, the Court instructed the jury that the "measure of [Plaintiff's] damages is the amount that would put [Plaintiff] in the same position he would have been in had the contract been fulfilled." Court's Final Jury Instruction 25. Plaintiff's insurance policy with Defendant included the following language concerning how much Plaintiff would be paid in the event of a covered loss:

> **HOW LOSSES ARE SETTLED**
>
> **Personal Property and Structures that are not Building Structures.**
> We will pay Actual Cash Value at the time of the loss in settlement of loss to: personal property; structures that are not buildings; antennas, carpeting, awnings, domestic appliances and outdoor equipment, all whether or not attached to buildings. This includes deduction for depreciation. We will pay no more than: the cost to repair or replace the damaged property with property of like kind and quality; or the Limits of Liability of this Policy.
>
> **Building Structures.**
> We will pay the cost to repair or replace the damaged part of the Dwelling or Additional Structures with equivalent construction and

>for equivalent use, without deduction for depreciation if, at the time of loss, the amount of insurance for the Dwelling or Additional Structures covered by this Policy is 80% or more of the Replacement Cost.
>. . .
>If the cost to repair or replace the damaged property is more than $5,000, we will not be liable for Replacement Cost until actual repair or replacement is completed with equivalent construction for equivalent use.
>
>In determining Replacement Cost, do not include the cost of excavation, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no basement, do not include the cost of those supports below the surface of the ground and inside the foundation walls.
>
>If you decide not to repair or replace the damaged property with equivalent construction and for equivalent use, settlement will be on an Actual Cash Value basis; this includes deduction for depreciation. You may make claim [sic] within two years after the settlement for any additional payment on a Replacement Cost basis if you repair or replace the damaged property with equivalent construction and for equivalent use.

Homeowners Insurance Policy 6500-41904-IN-46 ("Homeowners Policy") at 10 [DE 14-2].

The parties dispute the meaning of "Actual Cash Value" as applied to Plaintiff's house. In deciphering the meaning of a contract's terms, Indiana state law governs. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) ("In a diversity case, a federal court applies federal procedural but state substantive law. . . . Rules of contract interpretation are treated as substantive to avoid driving a wedge between state and federal diversity contract cases.").

Defendant argues that "Actual Cash Value" means replacement cost less depreciation. This interpretation, though, is inconsistent both with the internal language of the policy and with Indiana law. The policy language quoted above says that Defendant would "*pay the cost to repair or replace the damaged part of the Dwelling or Additional Structures with equivalent construction and for

equivalent use, *without deduction for depreciation.*" Homeowners Policy at 10 (emphasis added) [DE 14-2]. However, the policy also says that if Plaintiff decided "not to repair or replace the damaged property with equivalent construction and for equivalent use, settlement [would] be on an *Actual Cash Value basis; this includes deduction for depreciation.*" Homeowners Policy at 10 (emphasis added) [DE 14-2].

Indiana courts repeatedly contrast "replacement cost" policy provisions with "actual cash value" provisions. *See, e.g.*, *Erie Ins. Exch. v. Sams*, 20 N.E.3d 182, 190 (quoting *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 352 (Ind. 1982)); *Gregory & Appel Ins. Agency v. Phila. Indem. Ins. Co.*, 835 N.E.2d 1053, 1060 (Ind. Ct. App. 2005) ("Actual cash value is not the equivalent of replacement cost."). Furthermore, Indiana Supreme Court has noted that replacement cost coverage "reimburses the insured for the full cost of repairs, *if he repairs the building.*" *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 352 (Ind. 1982) (emphasis added). Here, Plaintiff did not repair or replace the home after the fire. Accordingly, Defendant's position – that Plaintiff needed to prove replacement or repair costs to show the actual cash value of the Property – is unfounded.

The policy, itself, does not define "Actual Cash Value." Similarly, Indiana law does not provide a precise definition. Instead, Indiana courts have held that the "broad evidence rule" governs the methods by which a party to an insurance contract may prove actual cash value. *See Travelers*, 442 N.E.2d at 352; *Gregory & Appel Ins. Agency v. Phila. Indem. Ins. Co.*, 835 N.E.2d 1053, 1060 (Ind. App. 2005) ("In determining the actual cash value of property, Indiana follows the broad evidence rule."); *Ohio Cas. Ins. Co. v. Ramsey*, 439 N.E.2d. 1162 (Ind. App. 1982).

Under the broad evidence rule, the trier of fact may consider "every fact and circumstance" tending to support a "correct estimate of the loss." *Travelers*, 442 N.E.2d at 357 (quoting

*McAnarney v. N.Y. Fire Ins. Co.*, 159 N.E. 902 (N.Y. 1928)). This allows a plaintiff to prove the actual cash value of damaged property by submitting to the jury evidence of "original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the insureds; the gainful uses to which the buildings might have been put, as well as any other fact reasonably tending to throw light upon the subject." *Id.* at 356 (quoting *McNarney*, 159 N.E. at 905). Even evidence under Defendant's "replacement cost less depreciation" definition of actual cash value is an appropriate, but not required, method of proving of "actual cash value." *Id.* at 357 (quoting *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 444 (N.J. 1978)).

Here, the jury received some evidence that "tend[ed] to throw light upon the subject" of value. *See Travelers*, 442 N.E.2d at 356 (quoting *McAnarney*, 159 N.E. at 905). The evidence showed that Plaintiff's brother bought the Property for $86,000 in 1998, and Plaintiff eventually bought the Property for $75,000 in 2002. Also, sometime around 2004, when Plaintiff had paid the mortgage down to $67,000, he opened a $20,000 line of credit secured by the Property. Plaintiff argues that adding the value of the line of credit to mortgage balance shows that the Property's value was at least $87,000 around 2004. Plaintiff also testified at trial about the general condition of the Property and its contents before and after the fire.

The question is whether this evidence was "legally sufficient evidentiary basis for a reasonable jury" to calculate Plaintiff's damages. Fed. R. Civ. P. 50; *see also Reeves*, 530 U.S. at 149. Defendant argues that the $87,000 figure – apparently derived from the mortgage and line of credit value in 2004 – improperly captures both the land and the house because the policy only covered damage to Plaintiff's house. Indeed, under Indiana law, "a fire insurance policy is a contract

8

of indemnity, [so] the intent of the parties to the policy is to place the insured in *the same financial position he would have been in had no loss occurred.*" *Ramsey*, 439 N.E.2d at 1165 (emphasis added).

To compensate Plaintiff for the value of both the land and the house, Defendant argues, would put Plaintiff in a better position than he would have been in had the house not burned down at all. Defendant also contends that the jury could not reasonably infer the 2008 pre-fire value of the home from the 2004 value because the jury would be required to guess how the housing market and, consequentially, the value of Plaintiff's house changed between 2004 and 2008.

While the evidence supporting the jury's verdict on the damages issue is minimal, a reasonable juror could have found that the evidence supported $87,000 in damages. *See Campbell*, 256 F.3d at 699. Between the four-year-old valuation of the Property and testimony about the house's size, condition, and contents, the jury could calculate a rough estimate of Plaintiff's damages. *Cf. Wasson v. Peabody Coal. Co.*, 542 F.3d 1172, 1175 (7th Cir. 2008) (setting aside jury's damage award "because it was based on nothing but speculation"). Even though Plaintiff did not offer evidence separating the value of the home from the land, the jury knew roughly how big the home and the lot were because they were shown pictures and heard testimony about its size, and damages need not be proven to a mathematical certainty. *See* Court's Final Jury Instruction 25.

Furthermore, Defendant has not shown that it would be entitled to judgment – erasing the jury's entire liability determination – solely because of an issue with the jury's damages calculation. As discussed above, there was sufficient evidence for the jury to find that Defendant was liable under the policy for Plaintiff's damages. Plaintiff's house burned down and Defendant was obligated to, but did not, pay Plaintiff under the policy. So the *fact* of damages has been established without

any speculation. Plaintiff's house burned down, and Defendant did not pay him for the damage, even though it was covered by the policy. *See Floyd v. Jay Cnty. Rural Elec. Membership Corp.*, 405 N.E.2d 630, 633 (Ind. App. 1980) ("Less certainty is required to prove the *amount* of loss than the fact that some loss occurred.") (citations omitted).

If Defendant wished to contest solely the amount of damages the jury awarded, remittitur or a motion for a new trial would have been the appropriate vehicles. Neither party moved for a new trial. Under Federal Rule of Civil Procedure 59(b), the parties had 28 days from the entry of judgment within which to file any motions for a new trial on the damages issue. That time has expired, and Rule 6(b) expressly prohibits any extension of that time.

The Court may *sua sponte* order a new trial on the damages issue under Rule 50(b)(2). However, when "a motion is based primarily on the excessive nature of the damages [awarded by a jury], the jury's award may be vacated and a new trial granted only if the verdict is monstrously excessive or if there is no rational connection between the evidence on damages and the verdict." *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993) (internal quotations omitted). Here, the jury's award was not "monstrously excessive" and appears rationally related to the 2004 valuation of the home, Plaintiff's testimony about the contents and condition of the Property, and pictures taken inside and outside the home.

Accordingly, the Court declines to disturb the jury's damages verdict.

## CONCLUSION

Consistent with the foregoing discussion, the Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law [DE 134]. The Court will address Plaintiff's Motion to Alter or

Amend the Judgment [DE 129] in a separate order.

SO ORDERED this 23rd day of January, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record